# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0498-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

S.L.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.L.,
a minor.

_____

Submitted on September 13, 2021 – Decided September 20, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FG-13-0047-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Carol A. Weil, Designated Counsel, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Amy Melissa Young, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Samantha Kelly, admitted pursuant to Rule 1:21-3(b), on the brief).

PER CURIAM

Defendant S.L.[1] is the biological mother of a son born in June 2019. She appeals from a September 29, 2020 judgment of guardianship terminating her parental rights to her son.[2] Defendant contends the New Jersey Division of Child Protection and Permanency (Division) failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.[3] We find no merit to defendant's arguments and affirm substantially for the detailed reasons

---

[1] Pursuant to Rule 1:38-3(d)(12), we refer to defendant by her initials.

[2] Because the child's biological father is unknown, he did not participate at trial or on appeal.

[3] The Legislature enacted P.L. 2021 c. 154, amending laws pertaining to the standards for terminating parental rights and the placement of children with relatives or kinship guardians. In reviewing a petition to terminate parental rights, N.J.S.A. 30:4C-15.1, as amended, excludes from consideration the harm to a child caused from being removed from resource parents.

expressed by Judge Teresa Ann Kondrup-Coyle in her September 29, 2020 oral decision.

We do not recite the entire history of the Division's interactions with defendant. Instead, we incorporate by reference the factual findings, credibility determinations, and legal conclusions contained in Judge Kondrup-Coyle's decision. We summarize the relevant facts adduced during the trial.

In June 2019, the Division removed the child immediately after defendant gave birth based on a finding of narcotics in the child's system. After giving birth, the hospital diagnosed defendant with post-traumatic stress disorder and opiate dependency. The Division filed a complaint seeking custody of the child based on defendant's "unaddressed substance abuse and mental health issues" and concerns regarding defendant's possible homelessness.

Initially, the Division placed the child with defendant's brother and sister-in-law. The child was subsequently transferred to a non-family resource home. After the trial, the child temporarily returned to the home of defendant's brother and sister-in-law. Thereafter, defendant's brother and sister-in-law suggested the Division place the child with their close friends. The Division placed the child with the recommended family and he awaits adoption by that family.

A-0498-20

While pregnant, defendant stockpiled and ingested Adderall. She had been prescribed Suboxone based on a history of abusing Percocets. Defendant admitted to using drugs, including "bump[s] of speed here and there" during the pregnancy. Defendant never sought prenatal care.

Based on the Division's complaint, on June 20, 2019, the judge granted the Division temporary custody of defendant's son. In addition, the judge ordered defendant to undergo substance abuse and psychological evaluations and a hair follicle test. The judge also allowed defendant supervised visits with the child at her brother's home.

The assigned Division case worker was unable to contact defendant by telephone and decided to visit defendant at her home to follow up on the scheduling of the evaluations and tests. Defendant refused to allow the case worker into the home but agreed to comply with the evaluations and execute releases for her medical records.

The next day, the case worker took defendant for a substance abuse evaluation and defendant tested positive for methamphetamines and norbuprenorphine. Because defendant failed to follow up with subsequent portions of the substance abuse evaluation, the treatment program was unable to make any treatment recommendations. Defendant never took the required hair

follicle test. The Division scheduled several additional substance abuse evaluations and appointments. However, defendant never appeared for the appointments.

Similarly, defendant failed to attend the numerous psychological examinations scheduled by the Division. She offered excuses for missing each scheduled appointment, including lack of transportation. However, when the Division offered to provide transportation to the scheduled appointments, defendant declined.

Thereafter, despite repeated efforts to contact defendant and follow up with her completion of the court-ordered evaluations, the Division was unable to reach defendant. On one occasion, the Division case worker went to defendant's home and saw defendant peek through the window of the home but refuse to answer the door.

Initially, defendant visited her son at her brother's home and assisted with limited caretaking activities, such as feeding and diaper changing. However, defendant's visits were inconsistent, and she would "disappear" for days. Defendant never explained why she missed visits with her son. On other occasions, defendant would arrive unannounced to visit the child well after his bedtime. Because defendant's brother and his wife had three other children and

5

defendant's involvement in the child's life was sporadic, they decided it was best for the child to be removed so another family could adopt him. Defendant's brother told the Division there were no other family members available to care for the child.

In August 2019, the child was placed in a non-family home. Defendant went to say good-bye to her son prior to removal from her brother's home but refused to speak with the case worker about the child's transfer to another home. Between August and December 2019, the Division attempted multiple times to contact defendant. Defendant would occasionally send text messages to the Division but did not respond to the Division's reply text messages. During this time, the child adapted to life with his new resource family. The Division case workers noted the child was happy and cheerful each time they visited.

In December 2019, defendant attended the permanency hearing. Because defendant failed to comply with the court-ordered evaluations and services to address her substance abuse and mental health issues, the court accepted the Division's plan to terminate defendant's parental right followed by adoption. Another Division worker was assigned after the court approved the adoption plan. The Division's adoption worker made numerous attempts to contact defendant, but those efforts were unsuccessful.

6

The Division's adoption worker finally met defendant at a court hearing in February 2020. When the adoption worker attempted to discuss the child's status, defendant focused the discussion on her neighbor who defendant claimed sabotaged efforts to improve her life and relationship with her son.

A different Division adoption worker was assigned in June 2020. Through video chats, the new adoption worker confirmed the child was happy and well-cared for by his resource parents. The resource parents remained committed to adopting the child.

The newly assigned adoption worker had the same difficulty communicating with defendant. She met defendant on September 16, 2020, just before the trial. Defendant insisted on meeting the adoption worker in a location other than her home because defendant said her neighbor "hacked into [her telephone]" and watched her every move. When the adoption worker suggested defendant move to another location to get away from the neighbor, defendant insisted she needed to "catch" the neighbor otherwise he would follow her and continue to sabotage her life.

Dr. David Brandwein, the Division's psychology expert, testified at trial. Because defendant missed each of the scheduled psychological evaluations, the doctor relied on records provided by the Division and his bonding evaluation

7

between the child and the resource parents. Dr. Brandwein observed a secure relationship between the child and the resource parents. He also noted defendant never visited after the child's placement in the resource home despite the resource parents' desire to maintain open communications, including in-person visits. Because defendant missed her evaluations and declined the various services offered by the Division to address her substance abuse and mental health issues, the doctor opined the resource parents provided more permanency and stability for the child and offered him a safer physical and psychological home. Defendant presented no competent expert testimony.

The Division's case worker and adoption worker testified at trial. Both described numerous efforts to contact defendant and provide the necessary services to be reunified with the child. The Division workers described defendant as unusually fixated on her neighbor and her belief the neighbor was sabotaging efforts to care for her son.

After consulting with her attorney, defendant elected to testify at trial. Rather than testifying how she planned to care for her son and address his needs, defendant described her neighbor's efforts to thwart plans for her son. Defendant explained she missed visits with her son because she feared the neighbor would

find her son and cause him harm. However, defendant proffered no evidence, other than her own testimony, to substantiate claims against the neighbor.

After hearing the testimony and reviewing the evidence, Judge Kondrup-Coyle found the Division met its burden and proved all four prongs of N.J.S.A. 30:4C-15.1 by clear and convincing evidence. The judge gave significant weight to the testimony of Dr. Brandwein and the Division's workers. The judge found the testimony of the Division's witnesses supported by the documentary evidence.

Under the first prong, the judge noted drugs were found in the child's system at birth. Defendant failed to get prenatal care which would have informed defendant using drugs while pregnant could adversely impact the unborn child. Various appointments to address substance abuse and mental health issues were offered to defendant but she declined to follow through. The failure to address her issues rendered defendant incapable of caring for her child. Based on these behaviors, the judge determined defendant posed a risk of harm to her son's safety, health, and development.

Under the second prong, the judge explained defendant elected to remain in her home to "catch" her neighbor in the act of sabotage rather than engage in the services offered by the Division to enable reunification. The judge

A-0498-20

concluded defendant's obsession with the neighbor caused harm to the child. In addition, the judge found defendant stepped out of the child's life for lengthy periods of time, endangering the child's health and welfare.

Under the third prong, Judge Kondrup-Coyle concluded defendant refused to participate in the services offered by the Division. In fact, defendant deliberately avoided the Division's efforts to contact her. Absent participation in the offered services, defendant was unable to demonstrate an ability to provide a safe and secure relationship with her child.

Also under the third prong, the judge concluded the Division made every effort to locate a family member to care for defendant's son. Defendant's brother and sister-in-law were unable to care for the child long term due, in part, to defendant's interfering with raising the child and participating sporadically in caring for the child. Based on the testimony, there were no other family members available to care for the child.

Under the fourth prong, while Dr. Brandwein was unable to evaluate defendant's relationship with the child, he explained the child developed a safe and secure relationship with the resource parents. Based on defendant's behaviors, including numerous missed visits with the child over the course of many months and refusal to participate in offered services, the judge surmised

A-0498-20

defendant lacked the necessary parent-child relationship. She concluded "there is no reason to even think that there is a relationship between [defendant and the child]." The judge held termination of defendant's parental rights would promote the child's need for permanency and stability and, therefore, would not cause more harm than good.

Judge Kondrup-Coyle considered the testimony and documentary evidence in concluding the Division proved all four prongs of the best interests test by clear and convincing evidence under N.J.S.A. 30:4C-15.1(a). Based on substantial and credible evidence adduced during the trial, she determined termination of defendant's parental rights was in the child's best interests. The judge explained defendant's inconsistent contact with the child, failure to assume a parental role, and refusal to complete court-ordered services supported the Division's satisfaction of all four prongs of the best interests test.

On appeal, defendant contends the Division failed to satisfy its burden under all four prongs of the statute and, therefore, the judge erred in terminating her parental rights.[4] We disagree.

_____

[4] While this appeal was pending, in January 2021, the child was placed with friends of defendant's brother and sister-in-law where he awaits adoption by that family. Due to the child's very young age, Dr. Brandwein based his opinions regarding termination of defendant's parental rights on the child's need for

11

Defendant did not offer any evidence other than her own self-serving testimony that reunification with her son was in the child's best interests. Judge Kondrup-Coyle's detailed findings and credibility determinations are entitled to deference because they are based on substantial credible evidence stemming from the judge's ability to see and hear the witnesses. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014); Cesare v. Cesare, 154 N.J. 394, 412-13 (1998).

Based on our review of the record and applicable law, we are satisfied that the evidence supports the judge's decision to terminate defendant's parental rights. Accordingly, we affirm for the reasons expressed by Judge Kondrup-Coyle.

Judge Kondrup-Coyle found the Division met its burden of proving harm to the child's health, safety, and development. The judge also concluded the Division proved defendant failed to take steps to cease harming the child based on her refusal to participate in services designed to address her substance abuse and mental health issues. Judge Kondrup-Coyle determined the Division made reasonable efforts to provide services to facilitate reunification but that

permanency and stability essential to his development and defendant's inability to provide the requisite permanency and stability.

A-0498-20

defendant's own actions and preoccupation with her neighbor rendered those efforts unsuccessful. After evaluating the unrebutted expert testimony, the judge soundly concluded the harm inherent in severing the parental relationship between the child and defendant was outweighed by the benefit of the child being adopted by parents who would provide a safe and nurturing environment.

Applying the legal principles governing our review of a decision to terminate parental rights, we conclude Judge Kondrup-Coyle's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0498-20